UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-81197-CV-HURLEY/HOPKINS

WILLIAM I. KOCH,

    **Plaintiff,**

vs.

ROYAL WINE MERCHANTS, LTD., et al.,

    **Defendants.**
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss [DE # 21]. The motion is fully briefed and ripe for adjudication. For the reasons to follow, the Court will grant Defendants' motion and dismiss the Complaint without prejudice.

Plaintiff William I. Koch commenced this action on October 27, 2011 asserting causes of action for fraud, conspiracy to defraud, aiding and abetting fraud, violation of the civil Racketeer Influenced and Corrupt Organization ("RICO") Act, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Defendants are Royal Wine Merchants, Inc., a New York corporation, and its principals, Daniel Oliveros and Jeff Sokolin.

According to the Complaint,[1] Defendants and a person by the name of Hardy Rodenstock conspired to produce and sell counterfeit bottles of expensive, rare wines. Rodenstock's role was to produce bottles filled with ordinary wine, but containing counterfeit labels indicating rare vintages from the most prestigious French vineyards. Defendants' role was to import the

---

[1] Reflecting the legal standard applied to a motion to dismiss, for the purposes of this Order, the factual allegations in the Complaint are assumed true.

counterfeit wine into the United States and promote its sale by advertising on their website and regularly sending faxes and e-mails touting the wines to potential purchasers. Despite their knowledge that the wines were counterfeit, Defendants represented the wines as genuine, i.e., that the contents of the bottles conformed to the labels. The success of the scheme was enhanced by the fact that collectors tend to retain rather than consume the wine. All told, Plaintiff purchased thirty-two bottles of Defendants' counterfeit wine for over $500,000.

In the instant motion, Defendants seek dismissal of these claims for lack of personal jurisdiction over Defendants Sokolin and Oliveros, lack of standing, and lack of specificity in the pleadings.

## I.

## PERSONAL JURISDICTION

The general rule is that "courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). The rationale for this rule is that "[a] defendant . . . not subject to the jurisdiction of the court cannot be bound by its rulings. *Id.* Inexplicably, the parties in this case limited their discussion of personal jurisdiction to the traditional analysis applied to a state's long-arm statute and the Fourteenth Amendment's requirement of "minimum contacts." Both parties ignored the RICO claim's impact on personal jurisdiction.[2]

In *Republic of Panama*, the Eleventh Circuit noted that "[s]ection 1965(d) of the RICO

---

[2]The only reference to personal jurisdiction under the RICO Act is in paragraph seventeen of the Complaint, wherein Plaintiff states that "[v]enue and personal jurisdiction are proper in this district under 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a) and (b). . . . In accordance with 18 U.S.C. § 1965(b), the ends of justice require that all defendants be brought before this Court."

statute provides for service in any judicial district in which the defendant is found. When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."[3] *Id.* at 942. In turn, if personal jurisdiction can be established under RICO, the doctrine of pendent personal jurisdiction would come into play, making it unnecessary to consider Florida's long-arm statute. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993), *cert. denied* 513 U.S. 822 (1994) ("[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative fact' . . . the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." (internal citation omitted)).

The *Republic of Panama* court held that a federal district court in Florida, presented with a RICO claim, had personal jurisdiction over non-Florida entities under RICO's nationwide service of process provision. The Court noted that the constitutional inquiry is governed by the Due Process Clause of the Fifth (not the Fourteenth) Amendment. Furthermore, the Court ruled that a trial court evaluating personal jurisdiction "must . . . examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state." *Republic of Panama*, 119 F.3d at 947. The Court rejected a "pure national contacts" approach and employed a multiple-factor balancing test. The premise for this ruling is that the Fifth Amendment's Due Process Clause requires consideration of "fairness" and "reasonableness" when resolving a

---

[3]This court, of course, is bound by the Eleventh Circuit's decision. There is a split, however, among the federal circuits on this issue. *See, e.g., FC Inv. Grp. v. IFX Markets, Ltd.*, 529 F.3d 1087, 1099 (D.C. Cir. 2008); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230-31 (10th Cir. 2006).

3

question of personal jurisdiction. This test only comes into play, however, that "only if a defendant has established that his liberty interests actually have been infringed." *Id.* at 946. Defendants bear the burden of demonstrating that assertion of jurisdiction in this forum will make litigation "so gravely difficult and inconvenient" that they will be at a "severe disadvantage" in comparison with their opponent. *Id.* at 948.

Applying these principles here, the court finds that Defendants have failed to satisfy their burden of presenting a compelling case that would render personal jurisdiction unreasonable. Defendants advertise and sell wine throughout the United States, and they have not shown that it would be gravely difficult and inconvenient to litigate in Florida.

## II.

### STANDING

To show standing,[4] a plaintiff must demonstrate a redressible injury caused by the defendant's actions. *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003). Defendants challenge both that Plaintiff has been injured and that their actions caused any injury. On the issue of whether Defendants caused Plaintiff's injury, Defendants argue that Plaintiff has not shown "any particular activities directed toward him by the Defendants, nor experienced by him as a direct consequence of their actions." Defs' Reply Supp. Mot'n to Dismiss, 6 [DE # 30]. Here Defendants overstate the required showing. Plaintiff needs not demonstrate that Defendants targeted him in any way or that his injury was a "direct consequence" of their actions. *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 148 F.3d 1231, 1251 n.23 (11th Cir.

---

[4]The Court notes that discussion of standing in this section is limited to the constitutional elements required of all claims and not the particular issue of statutory standing that pertains to civil claims under the RICO Act. The Court discusses the latter in Part III.A.2, *infra*.

4

1998) ("[N]o authority even remotely suggests that proximate causation applies to the doctrine of standing."). Rather, Plaintiff must only show that his injury is "fairly traceable to conduct of the Defendant[s]." *Kelly*, 331 F.3d at 820. Plaintiff makes this showing by alleging that Defendants were the source of all of the bottles at issue and that they knew the wine was counterfeit but nevertheless adopted the representations on their labels that they were of the stated vintage. Plaintiff's allegations also support the conclusion that he would not have purchased the wine had the labels not suggested that they were genuine. Therefore, Defendants' conduct in selling the wines with counterfeit labels was a factual or "but-for" cause of Plaintiff's injury.

The Court further finds that Plaintiff has been injured. The Complaint alleges that the Plaintiff having paid over $500,000, is left with wine that is worthless. The Court therefore concludes that Plaintiff has sufficiently established standing for the purposes of the instant motion.

### III.

### LACK OF SPECIFICITY AND FAILURE TO STATE A CLAIM UNDER RICO

Before turning to the sections of the RICO Act that govern this case, it is helpful to step back and gain a broader perspective. Congress designed RICO as a multi-pronged weapon to combat organized crime and other specified criminal activity. Section 1964(c), for example, authorizes an ordinary individual to assume the status of a private attorney general and institute a civil action for treble damages and attorney's fees. To succeed, the plaintiff must plead and prove, among other things, that the defendant engaged in a "pattern of racketeering activity" that proximately caused injury to the plaintiff. When, as in the instate case, a plaintiff alleges that a defendant engaged in a scheme to defraud manifested by multiple crimes of mail and/or wire fraud, the complaint must meet the heightened pleading standard of Federal Rule of Civil

Procedure 9(b). *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991); *see also Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511-12 (11th Cir. 1988). The Complaint must set forth facts establishing the asserted scheme to defraud and the specific facts of each alleged crime of mail or wire fraud. The RICO claim, in other words, must read like a "mini-indictment," alleging separate "counts" of mail or wire fraud. Weasel words such as "probably counterfeit" or "probably knew" have no place in a RICO pleader's vocabulary for the plaintiff must demonstrate that the defendants acted with scienter, i.e., a specific intent to defraud.

Pursuant to the RICO Act, it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Thus, a plaintiff must plead and prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Additionally, pursuant to § 1964(c), a plaintiff in a civil action must show that he has been "injured in his business or property by reason of [such] violation." The Supreme Corut has interpreted this language as imposing a requirement on a civil RICO plaintiff to establish that his alleged injury was proximately caused by the defendant's injurious conduct. *Hemi Grp., LLC v. City of New York, N.Y.*, ___ U.S. ___, 130 S.Ct. 983, 989 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 267-68 (1992); *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006).

The RICO Act defines racketeering activity comprehensively in § 1961(1) to include a variety of enumerated criminal offenses. In the Complaint, Plaintiff cites two such offenses: wire

6

fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341. Compl. ¶¶ 111, 112 [DE # 1]. Wire fraud or mail fraud "occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail [or wires] 'for the purpose of executing such scheme or artifice or attempting to do so.'" *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341). To qualify as a "pattern," Defendants must have engaged in at least two distinct but related racketeering activities (or "predicate acts"). *Maiz v. Virani*, 253 F.3d 641, 671 (11th Cir. 2001).

The injury Plaintiff complains of in this case is straightforward. Plaintiff purchased wines at a price far in excess of their true value. In all, Plaintiff alleges that he spent over $500,000 on wine that is essentially worthless.

Defendants contend that the allegations of wire fraud and mail fraud are not pled with sufficient particularity. Federal Rule of Civil Procedure 9(b), "which requires a party to plead fraud with particularity, extends to pleading predicate acts of mail and wire fraud under RICO." *Feinstein*, 942 F.2d at 42. The critical concern reflected in Rule 9(b) is that the allegations sufficiently alert Defendants "to the 'precise misconduct with which they are charged.'" *Durham*, 847 F.2d at 1511 (quoting *Seville*, 742 F.2d at 791).

The Complaint in this case reads like a novella, rich in detail about the overall scheme to defraud, but with gaping holes in its description of the predicate acts of wire and mail fraud. As previously indicated, a well-pled RICO claim must delineate at least two predicate acts—two distinct crimes of mail or wire fraud—committed in furtherance of the scheme to defraud. Each predicate act must be pled individually and be capable of standing on its own; i.e., it must contain all of the elements of the crime. The pleader may incorporate selected, numbered paragraphs by

7

reference, but the claim must identify each predicate act by number; e.g., "Predicate Act # 1," "Predicate Act # 2," etc. Furthermore, for each predicate act, the claim must specify: (1) the date and place of the sale; (2) the identity of the seller; (3) the identity of the buyer; (4) the bottle or bottles involved in the transaction; (5) the misinformation on each label; (6) the price paid by the purchaser for each bottle in the transaction; (7) if a fax, e-mail, or telephonic communication was involved in any phase of the sale, or constituted an inducement to purchase, the date of the communication, the name of the maker (sender or speaker), the name of the recipient, and the content of the communication; and (8) if the mail or a private interstate common carrier was involved in the transaction, the specifics of that use.

Perhaps as a consequence of the lack of detail with respect to the alleged crimes, the Complaint also fails to demonstrate satisfactorily that Plaintiff was injured "by reason of" the alleged RICO violations. "The 'by reason of' requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." *Williams*, 465 F.3d at 1287. In applying this requirement, the Supreme Court has held that "[w]hen a court evaluates a RICO claim for proximate causation, the central question is must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461; *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1147-49 (9th Cir. 2008); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) ("[T]he predicate acts must not only be the 'but-for' cause of the injury, but the proximate cause as well.").

## IV.

### RESULTING STATUS OF THE PENDENT STATE-LAW CLAIMS

As noted above, if the Plaintiff had adequately pled a RICO cause of action, under the doctrine of pendent personal jurisdiction the Court could have exercised personal jurisdiction over

Defendants with respect to the state-law claims without engaging in the traditional personal jurisdiction analysis for diversity claims. *See ESAB*, 126 F.3d at 628. This is so because both the RICO claim and the state-law claims arose out of the same nucleus of operative facts. *Id.* However, "if the only jurisdictionally sufficient claim is dropped or dismissed, particularly if that occurs early in the litigation, the pendent claim should be dismissed as well." 4A Wright & Miller, *Federal Practice and Procedure* § 1069.7, p. 236 (2002). Accordingly, having found that Plaintiff's claim under the RICO Act must be dismissed, the Court must also dismiss the state law claims unless Plaintiff can independently establish personal jurisdiction with respect to those claims.

The Court's subject-matter jurisdiction over Plaintiff's claims for fraud, conspiracy to defraud, aiding and abetting fraud, and violation of FDUTPA is predicated on diversity. 28 U.S.C. § 1332. A federal court sitting in diversity determines its personal jurisdiction over a defendant by asking first whether jurisdiction is conferred by the applicable statute, typically the state's long-arm statute, and, if so, whether the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *see also* Fed. R. Civ. P. 4(k)(1)(A) (serving a summons establishes personal jurisdiction over a defendant subject to the jurisdiction of a state court in the district court's forum). Generally, the plaintiff bears the initial burden of pleading a prima facie basis for jurisdiction, and if the defendant rebuts the plaintiff's allegations with affidavit evidence, the plaintiff then bears the additional burden of providing summary judgment–type proof in support of its jurisdictional allegations. *Id. See also Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999).

In the instant case, Plaintiff has failed to establish a statutory basis for personal jurisdiction over Defendants, which obviates the need for constitutional analysis.

To meet the statutory requirement, Plaintiff relies on Florida's long-arm statute, which provides as follows:

**Acts subjecting person to jurisdiction of courts of state**

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

[. . .]

  (b) Committing a tortious act within this state.

[. . .]

  (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of injury, either:

   1. The defendant was engaged in solicitation or service activities within this state; or

   2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193. Plaintiff argues that Defendants fall under both parts (1)(b) and (1)(f).

The Court can quickly dispose of Plaintiff's argument under part (1)(f). The Florida Supreme Court has held a purely economic injury insufficient to confer jurisdiction over a non-resident defendant under § 48.193(f). *Aetna Life & Cas. Co. v. Therm-O-Disc., Inc.*, 511 So. 2d 992, 994 (Fla. 1987); *Rogers v. Nacchio*, 241 Fed. Appx. 602, 606 (11th Cir. 2007) ("[B]ecause [Defendants] did not claim to have sustained physical injury or property damage, they failed to

10

establish jurisdiction under § 48.193(1)(f).").   On this basis, the Court finds part (1)(f) inapplicable to the instant case.

To establish personal jurisdiction over Defendants under part (1)(b), Plaintiff must "establish by the allegations in its complaint and, if challenged . . ., by its evidence that [Defendants], with respect to at least one of these counts, engaged in tortious conduct in Florida" relating to Plaintiff's purchase of the allegedly counterfeit wine. *Mazer*, 556 F.3d at 1275. Florida courts have ruled that "in order to 'commit a tortious act' in Florida, a defendant's physical presence [in the state] is not required." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). "'[C]ommitting a tortious act' in Florida under section 48.193(1)(b) can occur by making telephonic, electronic, or written communications into [Florida], *provided* that the tort alleged arises from such communications." *Id.* at 1253.

In the instant case, Plaintiff alleges that Defendants "[r]egularly and continually . . . sent faxes and emails worldwide and throughout the United States, including Florida, touting Rodenstock's counterfeit wine as genuine." Compl., ¶ 71. No further detail is supplied. Plaintiff also alleges that Defendants may have utilized auction houses to market the wine and that the auction houses, acting as conduits, repeated Defendants' misrepresentations in published catalogs. Once again, the general allegation is not supported by any detailed information.

Defendants Sokolin and Oliveros filed affidavits stating they never resided in Florida or visited Florida for a business purpose. Defs' Mot. Dismiss, Exs. 1, 3 [DE # 21-2, 21-3]. Oliveros states that his sporadic visits to Florida have been "usually for vacationing purposes." *Id.* Both Sokolin and Oliveros state that they have never in their "personal capacit[ies] made any statements or representations to persons residing in Florida . . . with the expectation" of doing

business nor have they "personally engaged in the solicitation of business in Florida." *Id.* With respect to each, the affidavits also recite conclusory allegations that the various indicia of jurisdiction have not been met (e.g., "I have never purposefully availed myself of the privileges of doing business in Florida.").

In ruling on the portion of Defendants' motion to dismiss based on lack of personal jurisdiction, the Court accepts as true the allegations in the Complaint only insofar as they remain uncontroverted by Defendants' affidavits. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). Plaintiff offered no affidavits nor deposition testimony to counter Defendants' affidavits. Therefore, the Court has accepted and relied upon the "portions of [Defendants' affidavits] that set forth specific factual declarations within the affiant's personal knowledge." *Id.*

Having reviewed the evidence and allegations before it, the Court concludes that Plaintiff has failed to establish sufficient facts to indicate Defendants committed any tort in Florida. In contrast to the plentitude of facts about the fraudulent scheme, the Complaint exhibits a paucity of detail regarding the Defendants' activities in Florida. For example, Plaintiff does not allege that he received any solicitations directly from Defendants. Plaintiff also does not provide details regarding the faxes and e-mails—specifically, who was the sender, who was the recipient, what did they say, when they were sent, etc.

The Court recognizes that tortious conduct committed elsewhere but causing harm in Florida can satisfy part (1)(b) of Florida's long-arm statute. *Posner*, 178 F.3d at 1217. Courts have held that telephone calls conveying fraudulent information, *Exhibit Icons, LLC v. XP*

*Companies, LLC*, 609 F. Supp. 2d 1282, 1297 (S.D. Fla. 2009), conspiracies to fix prices, *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582 (Fla. 2000), sale of a counterfeit baseball jersey, *Pathman v. Grey Flannel Auctions, Inc.*, 741 F. Supp. 2d 1318 (S.D. Fla. 2010), defamatory remarks on a website, *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010), and other acts in which the alleged tortfeasor never physically entered Florida satisfy § 48.193(1)(b). No specific information of this nature, however, has been pled in this case.

In *Wendt*, the Florida Supreme Court held that to satisfy the connexity requirement in § 49.193(1), the plaintiff's cause of action must *arise from* the telephonic, electronic, or written communications that would form the basis of personal jurisdiction. 822 So. 2d at 1253. For example, in *Pathman*, the plaintiff easily met this requirement by alleging that he purchased a fake baseball jersey in reliance on phone calls between him and the defendant. 741 F. Supp. 2d at 1320-21. Similarly, in *Exhibit Icons*, the defendant's communications into Florida regarding a tour operation contract satisfied jurisdictional requirements only if they provided the basis of the plaintiff's claims against it for fraud, negligent misrepresentation, and promissory estoppel. 609 F. Supp. 2d at 1297. In other words, a plaintiff alleging fraud must show that the defendant committed the underlying tort *by means of* the communications. Furthermore, the Complaint in this case fails to make clear whether the alleged communications into Florida pertained to the bottles Plaintiff purchased and whether anyone relied upon those communications in purchasing those bottles that eventually found their way into Plaintiff's possession.

Put simply, even if the Court assumes that each of the thirty-two bottles mentioned in the Complaint is counterfeit and that each of them was knowingly imported and resold by Defendants,

the Court has no basis to infer that any of them were purchased in reliance on communications into Florida. As such, Plaintiff has not successfully alleged that his causes of action "arise from" Defendants' communications in Florida and has therefore failed to allege statutory personal jurisdiction under § 48.193(1)(b).

In Claim Five, Plaintiff asserts a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* The contention is that Defendants' sale of wine, which they knew to be counterfeit, constitutes an unfair and deceptive trade practice. FDUTPA was "designed to protect not only the right of litigants, but also the righs of the consuming public at large." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. 1st DCA 2000). Accordingly, Florida courts have described FDUTPA as a "statutory tort," *Am. Boxing & Athletic Ass'n*, 911 So. 2d 862, 864-65 (Fla. 2d DCA 2005), and noted that it "constitutes a somewhat unique tortious act because, although it is somewhat similar to a claim in fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004). Thus, personal jurisdiction with respect to a FDUTPA claim may be may be attained over non-Florida parties pursuant to Florida's long-arm statute, § 48.193(1)(b). *Id.* at 599.

As noted earlier, Plaintiff in this case has failed to plead sufficient facts to establish that Defendants committed a tort in Florida. Moreover, because Claim Five alleges that Defendants committed fraud in the sale of counterfeit wine, the claim must satisfy the particularity requirement of Fed. R. Civ. P. 9(b). "The particularity requirement of Rule 9(b) applies to all

claims that sound in fraud, regardless of whether those claims are grounded in state or federal law." *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, *5 (S.D. Fla. 2011); *see also Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 279 (Fla. 4th DCA 1998) (Gross, J., concurring) (applying the analogous Florida rule of civil procedure to a claim under FDUTPA as "a statutory cause of action similar to fraud").

Suffice it to say that, as pled, Claim Five meets none of these requirements. Based on the foregoing, the Court finds that Plaintiff has not established personal jurisdiction over Defendants as to the state-law claims over which the Court's subject matter jurisdiction is based on diversity. Because Plaintiff's RICO claim also fails, the entirety of the Complaint must be dismissed.

## VI.

## DECRETAL PROVISIONS

In light of the forgoing, the Court finds that Plaintiff has failed to establish the Court's personal jurisdiction over the Defendants under the Florida long-arm statute. Fla. Stat. § 48.193. The Court further finds that while the Court may have personal jurisdiction over Defendants pursuant to the RICO Act, Plaintiff has failed to adequately plead the elements of a civil RICO action. Therefore, the Court will dismiss the RICO count and dismiss the state law. The dismissals, however, are without prejudice to file an amended complaint within sixty days of this Order.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. The motion to dismiss [DE # 21] is **GRANTED**.
2. The Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff may file an Amended Complaint within **SIXTY (60) DAYS** after the date of this Order.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 21ST day of March, 2012.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*