UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-81197-CV-HURLEY/HOPKINS

WILLIAM I. KOCH,

      Plaintiff,

vs.

ROYAL WINE MERCHANTS, LTD., et al.,

      Defendants.

_____/

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss the Second

Amended Complaint [ECF No. 42].  The parties have completed their briefing, and the motion is

ripe for adjudication.  For the reasons that follow, the Court will grant in part and deny in part

Defendants' motion.  The Court will dismiss all of Plaintiff's claims against the individual

defendants Daniel Oliveros and Jeff Sokolin for lack of personal jurisdiction.  Against the corporate

defendant, Royal Wine Merchants, Ltd., the Court will dismiss Plaintiff's RICO claims and his claim

for negligent misrepresentation and allow all other claims to proceed.

## I.  BACKGROUND

The background of this case was discussed in a prior order.  *See* Order Granting Def.'s Mot.

to Dismiss 1-2 [ECF No. 36].  Briefly, Plaintiff is a wine collector who alleges that Defendants,

Royal Wine Merchants, Ltd. ("Royal") and its principals, Daniel Oliveros and Jeff Sokolin, engaged

in a scheme to import and sell counterfeit rare wine.  Plaintiff alleges that Defendants knowingly

collaborated with a known counterfeiter, Hardy Rodenstock, to perpetrate this fraud.  Rodenstock's

role was to acquire old bottles and affix counterfeit labels indicating that the contents were rare vintages from world-famous vintners.[1]  Defendants' role was to import the counterfeit wine and market it throughout the United States.  Although Plaintiff did not purchase any of the counterfeit wine directly from Defendants, he alleges that he purchased the wine from third parties who relied upon the untrue representations embodied on the labels.  Plaintiff alleges that he too relied on the counterfeit labels in making his purchases.

Based on these allegations, Plaintiff has asserted the following causes of action: (1) fraud, (2) conspiracy to defraud, (3) aiding and abetting fraud, (4) negligent misrepresentation, (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, (6) conspiracy to violate RICO, and (7) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. 501.204.

## II.   JURISDICTION & VENUE[2]

The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff brings claims under the laws of the United States; specifically, 18 U.S.C. § 1962.  The Court has supplemental jurisdiction over the associated common law and state law claims pursuant to 28

U.S.C. § 1367.  Subject matter jurisdiction also exists based on the diversity of the parties.  28

---

[1]Plaintiff alleges, for example, that Rodenstock had the wine bottles engraved with electric tools to create a misleading appearance and enlisted a print shop to create fake labels on old paper modeled after samples of authentic labels Rodenstock provided.  2d Am. Compl. ¶¶ 20, 36 [ECF No. 45].

[2]The Court discusses personal jurisdiction in Part III.A., *infra*.

U.S.C. § 1332.

No party has objected to venue in this district, so any such argument is waived.  Fed. R. Civ. P. 12(h).

### III.   DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) states that a district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted."  On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986).

#### A.    *Personal Jurisdiction*

The first issue to be addressed is whether Defendants Oliveros and Sokolin adequately raised lack of personal jurisdiction in their motion to dismiss the Second Amended Complaint and, if so, whether Plaintiff pled sufficient facts to establish personal jurisdiction.[3]  To understand the Court's resolution of this issue, it is necessary to retrace some of the procedural history of this case.

Defendants Oliveros and Sokolin clearly asserted lack of personal jurisdiction in their motion to dismiss the initial complaint.  The Court ruled in Defendants' favor, finding first that, "[because] Plaintiff's claims under the RICO Act must be dismissed, the Court must also dismiss the state law claims unless Plaintiff can independently establish personal jurisdiction with respect to those

---

[3]Defendant Royal has never contested personal jurisdiction and therefore waived any such objection. Fed. R. Civ. P. 12(h); *see also Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990).

3

claims," and then finding that "Plaintiff ha[d] not established personal jurisdiction over Defendants

as to the state-law claims over which the Court's subject matter jurisdiction is based on diversity."

The Court thus dismissed the Complaint.[4]

In the order of dismissal, the Court granted leave to amend but directed the Plaintiff in any

amended pleading to comply with the specificity requirement of Rule 9, Fed. R. Civ. P.  Indeed, the

Court's directive was explicit and detailed:

> [Plaintiff] must specify: (1) the date and place of the sale; (2) the identity of the
> seller; (3) the identity of the buyer; (4) the bottle or bottles involved in the
> transaction; (5) the misinformation on each label; (6) the price paid by the purchaser
> for each bottle in the transaction; (7) if a fax, e-mail or telephonic communication
> was involved in any phase of the sale, or constituted an inducement to purchase, the
> date of the communication, the name of the maker (sender or speaker), the name of
> the recipient, and the content of the communication; and (8) if the mail or a private
> interstate common carrier was involved in the transaction, the specifics of that use.

Order Granting Def.'s Mot. to Dismiss 8 [ECF No. 36].  Although these instructions related directly

to Plaintiff's allegations of mail and wire fraud, the Court's subsequent discussion made clear the

importance of providing sufficient detail relating to personal jurisdiction as well:

> [T]he Court concludes that Platiniff has failed to establish sufficient facts to indicate
> Defendants committed any tort in Florida.  In contrast to the plentitude of facts about
> the fraudulent scheme, the Complaint exhibits a paucity of detail regarding
> Defendants' activities in Florida.  For example, Plaintiff does not allege that he
> received any solicitations directly from Defendants [and] also does not provide
> details regarding the [alleged] faxes and e-mails—specifically, who was the sender,
> who was the recipient, what [they said], when they were sent, etc.

*Id.* at 12.  Moreover, the Court provided an unusually long period of time—sixty days—for Plaintiff

---

[4]The Court also dismissed the Complaint for other pleading deficiencies related to the
heightened pleading requirements for fraud under Rule 9.

to file an amended pleading in order to ensure the Plaintiff would have sufficient time to satisfy these requirements.

Plaintiff then filed his First Amended Complaint, an eighty-three–page pleading with 190 paragraphs (excluding sub-paragraphs), which was a classic example of a shotgun pleading.  Each count incorporated by reference all of the preceding paragraphs in a manner that would frustrate meaningful analysis of Plaintiff's claims.  Bearing in mind the Eleventh Circuit's admonition to trial courts to prevent this kind of pleading abuse, *see Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996), the Court *sua sponte* dismissed the First Amended Complaint without prejudice.  *See* Order Dismissing Am. Compl. [ECF No. 43].  Prior to the entry of the Court's order, however, Defendants filed a motion to dismiss the First Amended Complaint.  The motion contained the following footnote:

> The RICO claim is especially important for Koch because the Court has already ruled that in the absence of its allowance for nationwide service of process there is no basis for the Court's exercise of jurisdiction over the natural person defendants.  The Court held on the basis of Sokolin's and Oliveros' undisputed testimonies (in affidavits sworn to on December 25, 2011 and December 24, 2011, respectively) that they are not amenable to process under Florida's *in personam* jurisdiction provisions (Fla. Stat. § 48.193) and are only susceptible to suit here under the RICO statute, and, if applicable, in accordance with the Court's exercise of ancillary jurisdiction.

Motion 1 n.1 [ECF No. 42].  Because of the *sua sponte* dismissal of the First Amended Complaint, the Court informed Defendants that their motion to dismiss would be held in abeyance pending the filing of a second amended complaint and that Defendants would be permitted to supplement the pending motion.  Thereafter, Plaintiff filed the Second Amended Complaint, a 127-page document with 217 paragraphs.

Plaintiff now argues that he has established personal jurisdiction under RICO and that

Defendants have waived any objection based on lack of personal jurisdiction.  The first argument fails in light of the Court's finding that Plaintiff cannot state a RICO cause of action.  *See infra* Part III.C.  The Court also rejects the second argument because Defendants have neither abandoned nor waived their objection to lack of personal jurisdiction.  The cited footnote in Defendants' motion to dismiss may not be the most robust assertion of their position, but it reflects Defendants' contention that Plaintiff did not establish a factual basis to support personal jurisdiction.  It is true that Defendants' argument misconstrues the status of Plaintiff's claims upon the filing of the amended pleading because the Court's finding on the initial motion to dismiss did not preclude Plaintiff from adding new allegations by which he could establish personal jurisdiction even without a RICO claim.  Nonetheless, the footnote makes clear that Defendants have neither waived nor abandoned their objection to personal jurisdiction.

As mentioned, Plaintiff relies on the RICO claims and, alternatively, asserts that Defendants waived their objections to lack of personal jurisdiction.  The Court rejects both grounds.  An examination of the factual allegations in the Second Amended Complaint, reveals that Plaintiff has not established a basis for personal jurisdiction over Oliveros and Sokolin for the reasons the Court articulated in its previous order.  Order Granting Def.'s Mot. to Dismiss 12-15 [ECF No. 36].  Plaintiff's vague allegations of communications into Florida are not attributed to either of the individual defendants and Plaintiff has not established their *connexity* to the specific torts at issue in this litigation.  *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).  In addition, Plaintiff's allegations of continuous, systematic contacts with Florida relate only to Royal, and Royal has already consented to the Court's jurisdiction over it.  Based on the foregoing and the Court's

conclusions below regarding the RICO claims, *see infra* Part III.C., the Court will dismiss all claims against the two individual defendants, Oliveros and Sokolin, due to lack of personal jurisdiction.

### B.    The Required Specificity Under Rule 9(b)

In an earlier order, the Court held that Plaintiff's previous complaint did not contain the level of specificity required by Fed. R. Civ. P. 9(b).   Rule 9(b) states that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting the fraud or mistake."  Accordingly, the Court directed Plaintiff to plead his fraud claims and the predicate acts of mail and wire fraud for his RICO claims by specifying the date and place of the sale, the identity of the seller and buyer, the bottles involved, the alleged misinformation, the sale price, the communications involved and identities of the parties involved, and the use of a common carrier involved in the transaction. Despite Plaintiff's amendments to the complaint, Defendants argue that he has failed to provide required specifics.

Having reviewed the fraud claims, the Court finds that Plaintiff has satisfied Rule 9(b)'s requirements at least with respect to the claims that the Court will allow to proceed beyond the instant motion.   To the extent described below, the allegations contain enough specificity to sufficiently alert Defendants "to the 'precise misconduct with which they are charged'" and therefore satisfy Rule 9.   *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp*, 742 F.2d 786, 791 (3d Cir. 1984)).

### C.    Claims Five & Six: RICO & RICO Conspiracy

For both civil and criminal RICO claims, a plaintiff "must satisfy four elements of proof: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Jones v. Childers*,

18 F.3d 899, 910 (11th Cir. 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "In civil cases . . . RICO plaintiffs must also satisfy the requirements of 18 U.S.C. § 1964(c)." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006). "[U]nder 1964(c), civil RICO claimants . . . must show (1) the requisite injury to 'business or property,' and (2) that such injury was '*by reason of*' the substantive RICO violation." *Id.* at 1282-83 (emphasis added). "To establish the 'by reason of' element of § 1964(c), a plaintiff must demonstrate that the defendant's violation was not only the 'but for' cause of the plaintiff's injury but also its proximate cause." *Southeast Laborer's Health & Welfare Fund v. Bayer Corp.*, 444 F. App'x 401, 409 (11th Cir. 2011) (unpublished) (quoting *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).

*Proximate cause* is a generic label for the "judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Holmes*, 503 U.S. at 268. "At bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient.'" *Id.* (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 264 (5th ed. 1984)). In this case, Plaintiff urges an interpretation of proximate cause that asks whether the predicate act was a "'substantial factor in the sequence of responsible causation'" leading to the injury. Response in Opp'n 12 [ECF No. 52] (quoting *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23-24 (2d Cir. 1990))). However, while "[t]he concepts of direct relationship and foreseeability are . . . two of the 'many shapes [proximate cause] took at common law,'" *Hemi Grp., LLC v. City of New York, N.Y.*, ___ U.S. ____, 130 S. Ct.

8

983, 989 (2010) (quoting *Holmes*, 503 U.S. at 268), "[Supreme Court] precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Id.* at 991. The Supreme Court specifically rejected an interpretation of proximate causation that would turn on foreseeability. *Id.* ("The dissent would have RICO's proximate cause requirement turn on foreseeability rather than on the existence of a sufficiently 'direct relationship' between the fraud and the harm.").

In evaluating the "directness of the relationship between the conduct and the harm," the Supreme Court has observed that it is "virtually impossible to announce a black-letter rule that will dictate the result in every case." *Holmes*, 503 U.S. at 272 n.20. Thus, the Court articulated a series of questions that guide the proximate causation analysis. *Id.* ("[O]ur use of the term 'direct' should merely be understood as a reference to the proximate-cause enquiry that is informed by the concerns set out in the text."). First, a court asks whether it is difficult to determine the amount of damages attributable to the defendant's wrongful conduct as opposed to independent factors. *Id.* at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."). Second, a court must consider whether recognizing the plaintiff's claims would force it to "[a]dopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts [in order] to obviate the risk of multiple recoveries." *Id.* Finally, a court asks whether "directly injured victims can . . . be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Id.* at 269-70; *see also Bridge*, 553 U.S. at 654-55.

In the case at bar, Plaintiff acknowledges that he did not purchase wine directly from the

Defendants.  Nonetheless, he claims he was duped and defrauded by Defendants' criminal activity, which he characterizes as a mail- and wire-fraud conspiracy to create, import, and sell counterfeit wine.  Plaintiff asserts that he purchased thirty-five bottles of counterfeit wine for over $600,000, all of which are worthless.  He purchased thirty of the bottles through Zachys, a well-known wine auction house.  2d Am. Compl. ¶ 52 [ECF No. 45].  Many of these bottles had been consigned to Zachys by a person named Eric Greenberg who, in turn, purchased the bottles from Defendants.[5] Plaintiff alleges that he relied on the misrepresentations on the bottles' labeling in deciding to purchase the wines.  In addition to the Greenberg/Zachys bottles, Plaintiff also purchased a selection of wines at an April 23, 2005 auction conducted by Acker and from Tribeca Wine Merchants.  As to these bottles, Plaintiff traces no connection to Defendants except for his allegation that the wines were initially imported and sold in the United States by Defendants.  There is no explicit accounting for how they got from Defendants to the third parties that ultimately provided them to Plaintiff.

### 1.  *Difficulty of Apportioning Damages Between Defendants' Conduct and Independent Factors*

The first *Holmes* inquiry asks whether a court would have difficulty apportioning responsibility for a plaintiff's damages between a defendant's conduct and other, independent factors.  Applying this test to the instant case reveals an absence of the directness necessary for a

---

[5]Plaintiff bases these allegations on probabilities.  For example, Plaintiff purchased three magnums of purported 1950 Chateau Petrus at Zachys' auction on October 28, 2005.  They had been consigned by Greenberg.  Plaintiff further alleges that between 1999 and 2002, Greenberg acquired twenty-three magnums of 1950 Chateau Petrus and that eight of these came directly from Defendants.  2d Am. Compl. ¶¶ 92-93 [ECF No. 45].  Because the three consigned to Zachys were counterfeit, Plaintiff argues that it is likely that these three bottles were among those Greenberg had purchased from Defendants.

finding of proximate causation.  Plaintiff's complaint outlines a multi-level series of sales and purchases that make clear that Plaintiff's claimed harm—*i.e.*, the price paid for each bottle of wine—may be attributable to a number of factors other than Defendants' alleged criminal activity. *Compare Anza v. Ideal Steel Co.*, 547 U.S. 451, 458-59 (1991).  With respect to the Greenberg/Zachys bottles, for example, Plaintiff's decision to purchase may have been influenced in part by the reputation of intervening sellers.[6]  Zachys is one of the premier auction houses in the rare wine market, 2d Am. Compl. ¶ 58 [ECF No. 45], and auction houses are known to evaluate the authenticity of wines prior to accepting them for auction.  *Id.* ¶¶ 48, 54.  Additionally, the provenance of a bottle of wine may add substantially to its value, and it would not be unusual for a down-the-line purchaser to pay a premium if the wine was known to come from the cellar of a noted collector.  The premium would reflect the purchaser's confidence that the collector had the means and expertise to properly maintain and care for the wine while under his control.

Furthermore, the Complaint gives some indication that Eric Greenberg may have tested and become aware of the inauthenticity of at least some of the Greenberg/Zachys wines prior to their being sold to Plaintiff.  *Id.* ¶ 48-50.  This would suggest that Greenberg also may share some responsibility for Plaintiff's harm, and indeed Plaintiff has filed an action against Greenberg based on the same purchases.  *See Koch v. Greenberg*, No. 07 Civ. 9600(BSJ)(DF), 2011 WL 4778813 (S.D.N.Y. Oct. 31, 2008).  This litigation further underscores the difficulty that would exist in

---

[6]It could also be that the wines were sold subject to disclaimers such that the uncertainty regarding their authenticity was understood by Plaintiff and factored into the price he was willing to pay for them.

apportioning blame amongst the potentially responsible parties.

With respect to the non-Greenberg/Zachys bottles, Plaintiff does not attempt to trace the path of the bottles from Defendants to the third parties who ultimately sold them to Plaintiff except to suggest a high probability that the bottles were initially imported into the United States by Defendants.  Thus, any number of intervening third parties could be involved and bear some causal relationship to Plaintiff's harm.  More fundamentally, without knowing which other parties may have resold the bottles, what statements they may have made regarding authenticity, what testing they may have conducted, etc., none of which information is provided in the complaint, the Court would have substantial difficulty "ascertain[ing] the amount of [] plaintiff's damages attributable to [Defendants'] violation, as distinct from other, independent, factors." *Holmes*, 503 U.S. at 269.  And, like the Greenberg/Zachys wines, the wine Plaintiff purchased at the Acker auction was consigned there by an individual, Rudy Kurniawan, who may have committed independent wrongs.  This is indicated by the allegation in the complaint that Kurniawan has been indicted "on criminal counts of wire fraud arising from [his] sales of counterfeit wine, including many wines of the same purported producers, vintages, and sizes as the counterfeit wines at issue here."  2d Am. Compl. ¶ 2 [ECF No. 45].  This creates further difficulty in attributing responsibility for Plaintiff's harm.

There are numerous additional factors that could make ascertaining the amount of damages attributable solely to Defendants' conduct difficult: the fact that many bottles were purchased at auction, where prices can fluctuate widely due to competitive bidding; whether market forces caused certain vintages to appreciate or depreciate after Defendants sold them; and the promotional activities surrounding individual sales.  Suffice it to say that much like the defendant in *Anza* "could

have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud," so too could independent factors have influenced the extent of Plaintiff's damages in the instant case. *Anza*, 547 U.S. at 458-59.  This array of potential intervening factors suggests the absence of proximate causation under the first *Holmes* factor.

### 2.   The Risk of Multiple Recoveries

The Court next considers whether recognizing Plaintiff's claims would force it to "[a]dopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts [in order] to obviate the risk of multiple recoveries." *Id.* at 269.  In *Holmes*, the Court observed that "'[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step'" and that this "'general tendency' applies with full force to proximate cause inquires under RICO." *Hemi*, 130 S. Ct. at 989 (internal citation omitted).  Plaintiff's claims require the Court to look well beyond the "first step."  Indeed, the lack of a direct relationship between Plaintiff's harm and Defendants' conduct is demonstrated by the possibility that Defendants would be subject to recoveries at each step along a sequence of sales and resales.  The initial purchasers of the wines from Defendants may have already brought claims against Defendants and subsequently resold the bottles, and the complaint suggests this possibility with respect to Greenberg, who "reached a settlement" with Defendants and returned some but not all of the counterfeit bottles to Royal.  2d Am. Compl. ¶ 50 [ECF No. 45].  The Complaint does not eliminate the possibility of similar scenarios with respect to the non-Greenberg/Zachys bottles, for whom a route from Defendants to Plaintiff has not been traced.  Despite the fact that they are now owned by Plaintiff, any of these bottles could have been the subject of claims against or settlements with

13

Defendants—the lack of directness makes it impossible to know.

Although this consideration overlaps somewhat with the first *Holmes* factor, the possibility of multiple recoveries encompasses not only the possibility that Defendants would be subjected to multiple claims but also that Plaintiff could recover against multiple parties. Indeed, there is some indication that Plaintiff has already been offered compensation for the Greenberg/Zachys wines. *See Koch v. Greenberg*, 2011 WL 4778813 at * 2 n.4 ("It is undisputed that Greenberg sent Plaintiff a check (to take the wine back) for $272,555.72, representing Plaintiff's total purchase price plus 9% interest and $1000 for courts costs."). While the Court does not consider the findings in *Koch v. Greenberg* in ruling on the instant motion, those findings are merely illustrative of the possibilities allowed by Plaintiff's indirect claims. There is nothing that would necessarily prevent Plaintiff from recovering for the Greenberg/Zachys wines both against Greenberg directly in the New York action and indirectly against Defendants in the instant action. In addition, Plaintiff refers to a potential judgment in his favor against Rodenstock in excess of $1,000,000. 2d Am. Compl. ¶ 2 [ECF No. 45]. Thus, the second *Holmes* factor further demonstrates the absence of the directness required for RICO proximate causation.

### 3. Whether Directly Injured Victims Can Be Counted on to Vindicate the Law

Finally, the Court must consider whether grappling with the problems described above is justified by the general interest in deterring injurious conduct. *Holmes*, 503 U.S. at 269-70. Because more directly injured victims can generally be counted on to thwart Defendants' alleged criminal scheme, the Court finds that RICO's goal of deterrence does not justify addressing a claim so indirect as the one Plaintiff asserts. *Id.* at 273-74. Plaintiff alleges that, in contrast to the thirty-five allegedly

14

counterfeit bottles he obtained that are indirectly traceable to Defendants, other individuals purchased far more counterfeit bottles directly from Defendants.  Greenberg, for example, is alleged to have purchased "more than $2.1 million dollars' worth of counterfeit rare wine."  2d Am. Compl. ¶ 42 [ECF No. 45].  Although the complaint alleges that he resold at least some of those allegedly counterfeit wines, the complaint gives no indication that he has completely offset the harm he suffered.  Greenberg would certainly be motivated to vindicate the laws by pursuing claims against Defendants,[7] and because he purchased wines directly from Defendants, his claims are much more straightforward and do not present the same concerns regarding multiple claims or recoveries or attribution of responsibility for his damages.

In addition to Greenberg, Plaintiff alleges that Robert Dickinson purchased "approximately 1,000 bottles of purported rare and fine wine"from Defendants "as part of [their] fraudulent scheme to sell counterfeit wine to the unsuspecting public."  *Id.* ¶ 53.  The complaint further suggests that Dickinson learned of the questionable authenticity of the wines he purchased from Defendants in 2008 and that "many" of the bottles "remain in Dickinson's cellar."  *Id.* ¶ 54.  Clearly then, Dickinson is an another more direct plaintiff who has ample motivation and means to pursue claims against Defendants relating to the very scheme that is the subject of Plaintiff's RICO claim.  So too is Frank Komorowski, who purchased more than 1,000 cases of purported rare wine from Defendants, many of which Komorowski is alleged to have determined "with the assistance of professional wine inspectors" to be counterfeit.  *Id.* ¶¶ 55-57.

---

[7]Indeed, as the Court has mentioned, Greenberg apparently had claims against Royal which resulted in a settlement.  2d Am. Compl. ¶ 50 [ECF No. 45].

Thus, the final *Holmes* consideration also points to a finding of no proximate causation, and weighing all of the *Holmes* factors together, the Court finds that Plaintiff's RICO claim is legally deficient and must be dismissed.  Because Plaintiff has failed to state a claim of a primary RICO violation and the conspiracy count does not contain any additional allegations, the claim for conspiracy to commit a RICO violation also fails.[8]  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 n.6 (11th Cir. 2010).

### D.       Claim One: Common-Law Fraud

"To state a claim for fraudulent inducement under Florida law a plaintiff must allege that (1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth of falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and [that] (4) the plaintiff justifiably relied on the false statement to his detriment."  *Barrett v. Scutieri*, 281 F. App'x 952, 953 (11th Cir. 2008) (unpublished) (footnote omitted) (citing *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004)).  Royal argues this claim must be dismissed because even if Plaintiff provides the specific details of false statements Royal made in promoting the wines, Plaintiff cannot show that he relied on those statements, particularly in light of disclaimers that may have applied.

---

[8]The RICO claims having been dismissed, the only remaining basis for personal jurisdiction over Oliveros and Sokolin is the Florida long-arm statute.  As the Court has previously discussed, Plaintiff fails to establish personal jurisdiction over Oliveros and Sokolin on this basis, and the claims against them must be dismissed.  *See supra* Part III.A.; Order Granting Def.'s Mot. to Dismiss 8-15 [ECF No. 36].  Thus, for the remainder of the Order, the Court discusses the motion to dismiss only as it relates to the remaining defendant, Royal.

Plaintiff advances two arguments in support of a finding of reliance.  The first is the general rule that

> [t]he maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

Rest. (Second) of Torts § 533 (1977).  Although this rule is more frequently applied to cases in which, for example, an accountant prepared reports for the express purpose of the client providing those reports to third parties, *see, e.g.*, *First Fla. Bank v. Max Mitchell & Co.*, 558 So. 2d 9, 14 (Fla. 1990), the Florida Supreme Court has recognized that a broader class of potential plaintiffs might exist for cases of fraudulent (as opposed to negligent) misrepresentation, as alleged in the instant case.

> The rule shall also apply to allegations of gross negligence, but the absence of privity shall continue to be no bar to charges of fraud. That this rule is broader than the one which limits liability to those in privity or near privity is explained by comment (h) directed to subsection (2) which reads in part:
>
>> Under this Section, as in the case of the fraudulent misrepresentation (see § 531), it is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information. In other words, it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the

> information for repetition to a certain group or class of persons and
> that the plaintiff proves to be one of them, even though the maker
> never had heard of him by name when the information was given. It
> is not enough that the maker merely knows of the ever-present
> possibility of repetition to anyone, and the possibility of action in
> reliance upon it, on the part of anyone to whom it may be repeated.

*First Fla. Bank*, 558 So. 2d at 14-15 (quoting Restatement (Second) of Tort § 552 cmt. d (1976)).

The issues in applying this rule to the instant case are

(a)   whether Royal actually intended that its representations to the initial purchasers of

its wines would be repeated to a certain group of people, as opposed to merely

foreseeing that there was a general possibility of repetition to anyone;

(b)   to what extent Royal's alleged misrepresentations were actually repeated to Plaintiff;

and

(c)   whether Plaintiff reasonably relied on whatever misrepresentations were repeated to

him.

Plaintiff's second argument for reliance is more straightforward.  Plaintiff argues that Royal,

as Rodenstock's co-conspirator, is responsible for the false statements embodied on the labels of the

wines and that Plaintiff relied upon those false statements when purchasing them.[9]  In addressing

*intentional* misrepresentations, the *Restatement (Second) of Torts* states that [o]ne who embodies a

fraudulent misrepresentation in an article of commerce . . . is subject to liability for pecuniary loss

caused to another who deals with him or with a third person regarding the article . . . in justifiable

reliance upon the truth of the representation."   Restatement (Second) of Torts § 532 (1977); *see also*

---

[9]For a discussion of conspiracy law's application to this case, see *infra* Part III.E.

*Sempione v. Provident Bank of Md.*, 75 F.3d 951, 963 (4th Cir. 1996). The *Restatement* goes on to cite as a specific example "when merchandise is placed on the market in containers with misleading labels or in a form that misrepresents its basic character." *Id.* § 532 cmt. c. This approach is more straightforward because Royal's intent that others should rely on its misrepresentations is presumed under this rule and because there is no question Plaintiff received and reasonably relied on the misrepresentations embodied in the labels. In addition, regardless of whether an auction house might have disclaimed any endorsement of the authenticity of the wines or its repetition of the content of the labels in its catalogues, an auction house disclaimer of its own representations of authenticity would not shield Royal's false statements embodied in the labels.

The Court therefore accepts Plaintiffs' second reliance argument and will deny Royal's motion to dismiss the claim for common-law fraud.[10]

### E.      Claim Two: Civil Conspiracy

Plaintiff alleges a separate claim for civil conspiracy. Unlike a criminal conspiracy, which is an offense in itself, a civil conspiracy "is not a separate or independent tort but is a vehicle for imputing the tortuous [sic] actions of one co-conspirator to another." *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 460 (Fla. 5th DCA 1999). In the instant case, Plaintiff alleges a conspiracy between Royal and Rodenstock to create, import to the United States, and sell counterfeit bottles of wine. In a conspiracy, "every act and declaration of each member of the confederacy in pursuance

---

[10]Defendants make passing reference to collateral estoppel barring some of Plaintiff's arguments for reliance. This reference engaged in no meaningful analysis of the elements of collateral estoppel and therefore warrants no discussion in this Order.

of the original concerted plan and with reference to the common object is, in contemplation of law, the act and declaration of them all," even with respect to actions that took place before a conspirator joined.  10 Fla. Jur. 2d *Conspiracy—Civil Aspects* § 5; *see also Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157 (Fla. 3d DCA 2008).  Thus, if found to be a knowing co-conspirator, Royal can be held liable not only for its role in importing and distributing the counterfeit wines but also for Rodenstock's end in creating the counterfeit labels and bottles.[11]  2d Am. Compl. ¶¶ 18-20 [ECF No. 45]

"A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Rami v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997); *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009).  Royal argues that Plaintiff has failed to allege either an agreement or an overt act in furtherance of the conspiracy.

Agreements, of course, may be established by circumstantial evidence.  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997).  Even when predicated on circumstantial evidence, the complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[11]This attribution of Rodenstock's actions to Royal becomes significant in Plaintiff's claim for common-law fraud.  *See supra* Part III.D.

20

liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal citation omitted).  In the context of a conspiracy, mere evidence of knowledge of the crime or association with conspirators is insufficient, *United States v. Martino*, 759 F.2d 998, 1002 (2d Cir. 1985), but "[p]roof that the [defendant] committed an act which furthered the purpose of the conspiracy is an example of the type of circumstantial evidence [that can] prove the existence of an agreement." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1182 (11th Cir. 2006).

In the instant case, Plaintiff has alleged a number of facts that circumstantially indicate an agreement between Royal and Rodenstock.  For example, Plaintiff alleges that Royal was Rodenstock's primary importer in the United States, that Royal worked with him for over ten years—specifically from 1998 to 2008—and that Royal's officers communicated with him regularly by fax over that time.  2d Am. Compl. ¶¶ 22, 25, 29 [ECF No. 45].  Plaintiff also alleges that Royal, whose proprietors held themselves out as experts in the field of rare wines, *id.* ¶¶ 4, 61, 97, must have known and did know that the wines imported from Rodenstock were counterfeit, *id.* ¶¶ 139-40, particularly in light of Rodenstock's notoriety.  *Id.* ¶¶ 19, 20, 31-32.  Although the Court does not accept bare conclusory allegations of Royal's "knowledge," Plaintiff supports this allegation with facts.  For example, the amount Royal paid Rodenstock for the bottles of counterfeit wine was far below the value that should have obtained if the wine was genuine—specifically, Royal bought bottles of 1921 Chateau Petrus and 1811 Chateau Lafite for between $475 and $665 when their value if authentic would have been more than $9,000, and when they were, in fact, sold for $9,750.  *Id.* ¶¶

21

42-44, 139.  In addition, Plaintiff alleges that Royal imported eighteen magnums[12] of 1947 Chateau Lafleur over a ten-year span when only five magnums of that vintage were ever bottled.  *Id.* ¶ 34. Similarly, despite statements from persons associated with Chateau Petrus that it did not bottle magnums prior to 1945, Royal imported forty-four magnums of Chateau Petrus from vintages dated 1945 or earlier.  Taken together, Plaintiff's allegations make plausible a finding that Royal agreed to participate in a lengthy and close association with an individual whom they knew provided them with counterfeit wines, over the course of which association they acted as his primary importer in the United States and did, in fact, import a substantial volume of wine.  *Id.* ¶ 55.  From these findings, the Court concludes that a reasonable finder of fact could conclude that Royal knowingly agreed to participate in a scheme to produce and sell counterfeit wine.

Plaintiff has also pled overt acts by alleging instances in which Royal imported allegedly counterfeit wines from Rodenstock.  *See, e.g.*, 2d Am. Compl. ¶¶ 170, 171 [ECF No. 45].  Importing the bottles into the United States so that they could be resold at much higher prices clearly furthers the alleged conspiracy.  For these reasons, the Court finds that Plaintiff has adequatley alleged a civil conspiracy and will deny Defendants' motion to dismiss claim two.

### F.    Claim Three: Aiding & Abetting Fraud

It is uncertain whether Florida recognizes a claim for aiding and abetting fraud, and a dearth of authority exists addressing this topic.  *ZP No. 54 Ltd. Partnership v. Fidelity & Deposit Co. of Md.*, 917 So. 2d 368, 371-72 (Fla. 5th DCA 2005).  If such a claim exists, the following elements

---

[12]In wine, a magnum is a bottle that is twice as large as a standard wine bottle—1.5 liters compared to 750 milliliters.

are required: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Id.*; *see also Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012) (unpublished). The theory in the instant case is that Rodenstock committed the underlying fraud by creating counterfeit bottles of wine and that this fraud harmed Plaintiff, who was reasonably misled by the bottles and their labels. Plaintiff argues that Royal aided and abetted Rodenstock's fraud because it assisted him by marketing what it knew was counterfeit wine.

Defendants have attacked one aspect of the substantial assistance Plaintiff alleged; specifically, that Royal concealed Rodenstock's identity as the source of the wines when they were resold. However, numerous other forms of assistance remain. By locating buyers and importing the wines, for example, Royal assisted Rodenstock in carrying out the counterfeiting scheme.

In light of the forgoing, the Court will deny Defendants' motion with respect to claim three.

### G.    *Claim Four: Negligent Misrepresentation*

"[I]n order to allege a viable cause of action for negligent misrepresentation a plaintiff must allege in his complaint that: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *Simon v. Celebration Co.*, 883 So. 2d 826, 831 (Fla. 5th DCA 2004).

Royal attacks Plaintiff's negligent misrepresentation claim on the same bases articulated above; specifically, that Plaintiff failed to allege Royal's misrepresentations with sufficient particularity or to establish justifiable reliance on those misrepresentations. Again, the Court must consider two sets of misrepresentations: (1) Royal's promotion of the wines to its own customers; and (2) the representations embodied on the labels themselves. However, unlike the claim for *intentional* misrepresentation, the theory underlying this claim is that Royal did not know whether the wines were counterfeit but that it should have known that they were. This theory does not invoke or rely upon a conspiracy analysis inconsistent with Plaintiff's conspiracy claims, which presume that Royal knowingly participated in Rodenstock's scheme to sell counterfeit wines. It is only through conspiracy law that Rodenstock's labels can be attributed to Royal. While it is true that "[o]ne who embodies a fraudulent misrepresentation in an article of commerce" can be liable to third parties, Restatement (Second) of Torts § 532 (1977), Plaintiff has not, in this count, alleged that Royal embodied the misrepresentations[13] and has pointed to no law under which the labels made by another can be attributed to it for the purposes of a continuing negligent misrepresentation.[14]

---

[13]The cases Plaintiff cites, *see* Response 26 [ECF No. 52], do not address this concern because they involve misstatements on labels prepared by the defendants as opposed to labels prepared by third-parties on goods that the defendants did not produce but merely resold, as in the instant case.

[14]Plaintiff has argued that by selling the bottles with the misleading labels affixed, Defendants "affirmed and vouchsafed" the representations on the labels. *See, e.g.*, 2d Am. Compl. ¶ 110 [ECF No. 45]. This may be true. However, Plaintiff has not pleaded this statement of affirmation (whether implicit or explicit) with particularity (only that it must have happened at some point) nor has Plaintiff shown how that affirmation was repeated to him. Unlike the labels themselves, which become a continuing misrepresentation as the labels are passed through commerce, Plaintiff's affirmation of the content of the labels when the bottles were sold are discrete misrepresentations

The Court thus turns to the alleged written and oral misrepresentations Royal made in promoting the wines.[15]  These misrepresentations do not continue into commerce, as do the wine labels, but instead only go as far as those who interacted with Royal directly.  For this reason, Royal argues Plaintiff cannot establish reliance as to these misstatements.  Plaintiff counters by citing *NationsBank, N.A. v. KPMG Peat Marwick LLP*, 813 So. 2d 964, 967 (Fla. 4th DCA 2002), in which the court discusses the Florida Supreme Court's adoption of § 552 of the *Restatement (Second) of Torts* in the context of third-party reliance on negligent misrepresentations by accounting firms.  The *Restatement*, as quoted by the court, provides as follows:

> (1) One who, in the course of his business . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered:
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he . . . knows that the recipient intends to supply it; and
>>
>> (b) through reliance upon it in a transaction that he . . . knows that the recipient so intends or in a substantially similar transaction.

*Id.* (internal citation omitted).  Having reviewed this doctrine, the Court finds it inapplicable to the

---

that occurred only between Defendants and their customers (or potential customers).  Only by demonstrating that these misrepresentations were made or repeated to him could Plaintiff show reliance.

[15]For example, on August 10, 2000, a Royal employee faxed a solicitation to Greenberg that represented an allegedly counterfeit bottle as genuine 1870 Chateau Lafite.  2d Am. Compl. ¶ 114, at 56 [ECF No. 45].

instant case.  Royal did not supply false information "for the guidance of others in their business transactions." *Id.*  Royal sold not to retailers but to consumers, and although it may be true that fine wines are commonly resold many times, they are also consumed.  Plaintiff has not made any showing that Royal "[knew] that the recipient [intended]" to engage in similar transactions or that Royal knew of anything more than "the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated."  Restatement (Second) of Torts § 552 cmt. h.  Indeed, none of the *Restatement*'s illustrations encompass a situation comparable to the instant case.  Thus, the Court will grant Royal's motion to dismiss claim four because Plaintiff has failed to plead justifiable reliance.[16]

### H.    Claim Seven: Florida Deceptive & Unfair Trade Practices Act

A claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1), requires a plaintiff to show "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages."  *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008).  In challenging Plaintiff's claim, Defendants again argue that Plaintiff has failed to plead the alleged deceptive acts with sufficient particularity or that he was proximately injured by the deceptive acts. For the same reasons discussed in the sections above, the Court finds that the Complaint meets the

---

[16]Even if the Court were to find that Plaintiff had established the elements required for third-party reliance on a negligent misrepresentation, the lack of particularized allegations regarding Royal's misrepresentations (including who received them other than unnamed third parties) and when they were received by Plaintiff—Plaintiff alleges that some but not all were repeated to him in auction catalogues—would present an additional hurdle.  Because claim four will be dismissed on alternate grounds, the Court declines to address these concerns further.

required level of specificity.[17]  At least with respect to the labels on the bottles, the alleged deceptive practices are sufficiently established to allow the claim to proceed.  The Court further finds that Plaintiff has properly alleged proximate causation based on the same reasoning that allows a finding of reliance upon misrepresentations embodied in articles of commerce despite no direct interactions between Plaintiff and Royal—noting again the distinction between proximate causation under the general common law and proximate causation for RICO purposes. To the extent Royal can be held accountable for embodying misrepresentations in counterfeit wine labels, they have engaged in a deceptive practice that proximately caused injury to Plaintiff when he purchased the bottles of wine believing their labels accurately reflected their contents.  The Court will therefore deny the motion as to claim seven.

## CONCLUSION

In light of the foregoing, the Court will grant the motion with respect to all of Plaintiff's claims against the individual defendants, Oliveros and Sokolin, and also with respect to Plaintiff's RICO claims and his claim for negligent misrepresentation against Royal.  The Court will deny the motion in all other respects.  Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.    Defendants' Motion to Dismiss the Second Amended Complaint [ECF No. 42] is

       **GRANTED IN PART** and **DENIED IN PART**.

---

[17]In addition to the allegations discussed above, the Court notes that Plaintiff has alleged Royal has targeted Florida consumers in its alleged scheme to sell counterfeit wines, including Robert Dickinson. 2d Am. Compl. ¶ 53 [ECF No. 45].

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss
Koch v. Royal Wine Merchants, Ltd.
Case No. 11-81197-cv-DTKH

2.    As to Defendant Royal Wine Merchants, Ltd, the motion to dismiss is **DENIED** with respect to claims one, two, three, and seven; the motion to dismiss is **GRANTED** with respect to claims four, five, and six, which are **DISMISSED WITH PREJUDICE**.

3.    As to Defendants Daniel Oliveros and Jeff Sokolin, their motion to dismiss is **GRANTED** with respect to all claims, which are **DISMISSED WITH PREJUDICE**.

4.    Pursuant to Rule 12(a)(4), Royal shall file an answer no later than **FOURTEEN (14) DAYS** after the date of this Order.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 5th day of December, 2012.

Daniel T. K. Hurley
United States District Judge

Copies provided to counsel of record

For updated court information, visit unofficial website at http://www.judgehurley.com